1
2
3
4
5
6              IN THE UNITED STATES DISTRICT COURT
7                 FOR THE DISTRICT OF ARIZONA
8
9   Christopher Lee Cecil,              )   No. CIV 05-1626-PCT-NVW (DKD)
                                        )
10              Petitioner,             )
                                        )   **REPORT AND RECOMMENDATION**
11  vs.                                 )
                                        )
12  Dora Schriro; Johnny Tucker,        )
                                        )
13              Respondents.            )
    _____)
14

15  TO THE HONORABLE NEIL V. WAKE, U.S. DISTRICT JUDGE:

16          Christopher Lee Cecil filed a petition for writ of habeas corpus on May 31, 2005,

17  challenging his conviction in Maricopa County Superior Court for first-degree murder, and

18  the imposition of life imprisonment.  He raises claims of prosecutorial misconduct, the

19  admission of involuntary statements, and ineffective assistance of counsel.  Respondents

20  contend that Cecil's petition is untimely, and that his claims are procedurally defaulted.  For

21  the reasons stated below, the Court recommends that Cecil's petition be denied and dismissed

22  with prejudice.

23                    **FACTS AND PROCEDURAL HISTORY**

24          The facts presented at trial are summarized in the court of appeals memorandum

25  decision:

26          Appellant knew the victim socially because they lived in the same area
            in West Phoenix.  On Saturday, April 1, 2000, appellant and a new
27          acquaintance, Richard Aros, rented a motel room with three women to "party"
            by consuming drugs and alcohol.  The next morning, appellant allowed Aros
28          to borrow his car to obtain more drugs.  Aros left his belongings at the motel,

including some clothes and a metal weapon sixteen inches in length and similar to a knife with a square handle and a sharpened tip. Appellant had handled the weapon in front of Aros and commented that "you could slap somebody with this and hurt 'em."

While driving on Van Buren street, Aros happened upon Cruellar and agreed to drive him across town to meet a "date." Once there, Cruellar and three other men ordered Aros out of the car and began stripping the car down by stealing the stereo, speakers, and other parts of the car. Aros took a cab back to West Phoenix where he saw appellant and explained what happened. Aros testified that appellant was extremely upset and said something to the effect of, "I'll handle this." Aros also testified that appellant was carrying with him "[a] bunch of bags and stuff" that they had brought to the motel. Aros did not recover his weapon and apparently did not question appellant regarding its whereabouts.

Appellant spoke to Phoenix Police Officer Mark Heimall, who was patrolling the neighborhood, at approximately 1 a.m. on Monday, April 3rd. The officer noted that appellant's stereo was missing from his car and appellant explained that he had loaned the car to a friend a few days earlier and the friend returned the car saying the stereo had been stolen. When asked if he had any weapons or drugs in his car, appellant said he had a knife in the backseat. Officer Heimall did not see the knife in plain view and did not search for it. Appellant's hands were not injured or bandaged.

Later that morning, around 11 a.m., Phoenix Police Officer Lorenzo Martinez was dispatched to 29th Drive and Van Buren where he found Cruellar's dead body in a dirt field lying on a cardboard box and covered with a blanket. An autopsy revealed that Cruellar had died from twenty-one stab and incised wounds to the head, neck, back, face, and right hand. Evidence of "blunt force injuries" to the chest and a stab wound that penetrated the frontal bone in his forehead indicated to Cruellar's medical examiner that the assailant had used a "very heavy and strong weapon."

Later that same day at about 2:45 p.m., appellant checked into the emergency room at John C. Lincoln hospital for treatment of severe lacerations to both hands. Appellant told Detective Kathi Galbari that the wounds occurred when he was moving a glass table at his mother's house that morning and it shattered, but an investigation did not corroborate appellant's story. When asked by Detective Galbari if he knew the stereo in his car was gone, appellant said that he sold his car stereo for $100 in order to buy gas.

DNA evidence linked appellant to the scene of the crime. DNA recovered from the blanket covering Cruellar and from a foam cushion under Cruellar's head revealed a mixture of appellant's, Cruellar's, and an unknown third person's blood. Most of the DNA sampled from the foam cushion came from appellant.

(Doc. #11, Exh E at 2-5).

Following the conclusion of his direct appeal, in which the only issue raised was the constitutionality of the statutory definition of "premeditation," Cecil filed a notice of post-

conviction relief on June 11, 2003 (Doc. #11, Exh G).  Counsel was appointed, and filed a notice of completion of review on October 1, 2003, indicating that he had reviewed the record and was unable to raise a colorable claim (*Id*., Exh H, I).  Cecil was given leave and did file a *pro per* petition (*Id*., Exh J, K).  On March 15, 2004, the trial court summarily dismissed the petition, finding that the issues of "prosecutorial misconduct, involuntary statements, jury being prejudiced by seeing him in jail garb, [and] bias of the judge" were all precluded because they could have been raised on direct appeal (*Id*., Exh M).  The trial court also found that as to his claim of ineffective assistance, "[d]efendant has presented nothing more than conclusory allegations.  He has shown neither deficient performance nor prejudice" (*Id*.).  The trial court concluded that "[a]ll other claims are likewise raised in a conclusory manner without evidentiary or legal support" (*Id*)

Cecil did not petition for review of the trial court's denial of his post-conviction petition within 30 days of the trial court's decision as required by Ariz. R. Crim. P. 32.9(c). A review of the Maricopa County Superior Court Criminal Docket #CR2000-005898 indicates that a copy of the trial court's March 15 minute entry denying Cecil's post-conviction petition mailed to him was returned on March 31, 2004, indicating that "Name & Number Do Not Match" (Doc. #17, 3/31/04 returned mail).  Cecil filed a pleading with the trial court dated June 18, 2004, requesting information about his Rule 32 proceedings, indicating that he had "not gotten any response from the court,"  and asking "this Court to grant my Rule 32 or inform me of the Judge's ruling on my case" (*Id*.).  The court stamp indicates it was received July 9, 2004 by the Rule 32 Management Unit and July 21 in Appeals.

The docket also indicates an order from the court of appeals dated August 16, 2004, acknowledging an untimely petition for review filed by Cecil on August 9.  The order states in pertinent part:

> A petitioner who seeks appellate court review of the actions of the trial court must file a petition within 30 days after the final decision of the trial court. *Whether petitioner was without fault for the untimely filing is a question*

*of fact.* The trial court may, "after being presented with proper evidence, allow a late filing" if it finds that petitioner was not responsible for the untimely filing.

(Doc. #17, 8/16/04 order, emphasis added).

The court stamp indicates it was filed September 29, 2004, in Maricopa County Superior Court (*Id.*). The docket also reflects a copy of a letter sent by the Clerk of Court for the court of appeals to Cecil on September 14, 2004, stating as follows:

On September 13, 2004, the Court of Appeals Division One, received an original document entitled "2nd Petition for Review". Pursuant to this court's order filed September 2, 2004, *a motion for delayed petition for review was to have been filed in the trial court.* We are therefore forwarding your original document to Maricopa County Superior Court for filing.

If you have any questions, you may wish to consult an attorney regarding this matter.

(*Id.*, 9/14/04 letter, emphasis added).

The docket further reflects that the Clerk of the Court of Appeals notified the Clerk of the Maricopa County Superior Court by letter dated September 22, 2004 by enclosing a certified copy of its Order dismissing Cecil's petition for review (*Id.*, 9/22/04 letter).

The next docket entry is Cecil's December 21, 2004 Request for Preparation of Post-Conviction Relief Record, and a Notice of Post-Conviction Relief (*Id.*). In his Notice of Post-Conviction Relief, he acknowledges his previous Rule 32 petition, and claims a significant change in the law and actual innocence as justification for his successive post-conviction relief application (*Id.*). Specifically he asserted newly discovered evidence, actual innocence, ineffective assistance and a *Blakely* claim. On January 24, 2005, the trial court summarily dismissed his December Rule 32 petition, finding the claims either precluded or not colorable (Doc. #14, Exh B).

## STATUTE OF LIMITATIONS

Cecil was required to file his federal petition within one year of the date on which the judgment became final by the conclusion of direct review or the expiration of time available for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). Respondents contend that Cecil's

1    conviction became final on June 26, 2003, the date on which the time for filing a petition for

2    review to the Arizona Supreme Court from the court of appeals memorandum decision

3    expired.   However, the time during which a properly filed application for state post-

4    conviction or other collateral review with respect to the pertinent judgment or claim is

5    pending shall not be counted toward this one-year period of limitation. *See* § 2244(d)(2).

6    Respondents acknowledge that the limitations period was tolled on June 11, 2003, when

7    Cecil filed his petition for post-conviction relief, and remained tolled until March 15, 2004,

8    when the trial court denied Cecil's post-conviction petition.  Respondents contend that Cecil

9    then had until March 15, 2005 to timely file; that his petition, filed May 31, 2005, was 77

10   days beyond the one-year limitations period; and that he is not entitled to any statutory

11   tolling.

12       In addition, Respondents contend that Cecil has not shown any extraordinary

13   circumstances beyond his control which made it impossible to timely file his petition. *See*

14   *Green v. White*, 223 F.3d 1001, 1003 (9th Cir. 2000).  However, he contends in his reply that

15   the trial court "purposely" and with "malce [sic] intent" did not inform Cecil of the court's

16   dismissal of his Rule 32 petition "for two months."   Cecil further contends that he had to

17   write to the courts for information on his "appeal."   Cecil claims that the trial court's failure

18   to inform him of the status of his "appeal" was done with the trial court's knowledge that

19   Cecil would miss his time limits on both his "motion for review and all future appeals" (Doc.

20   #12).  He asks the Court not to dismiss his case "because of something that was completely

21   out of [his] hands" (*Id*.).   The Court's review of the record indicates that a finding of

22   extraordinary circumstances is appropriate in this case.[1]

23

24            [1]     The Court draws several logical inferences from a review of the Superior Court
     docket.  First, Cecil did not receive a copy of the trial court's March 15 Minute Entry Order
25   denying his Rule 32 petition, despite a specific request for such information filed with the
     court.  Second, the trial court never ruled on Cecil's Motion for Delayed Filing of Petition
26   for Review, despite three specific communications received by the superior court from the
27   court of appeals.  Third, because of Cecil's failure to receive notice of the trial court's

28                                              - 5 -

1

**EXHAUSTION OF REMEDIES**

2     A state prisoner must exhaust his state remedies before petitioning for a writ of habeas

3 corpus in federal court.  28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-

4 66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991).  To properly exhaust

5 state remedies, a petitioner must fairly present his claims to the state's highest court in a

6 procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999).  In

7 Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by

8 properly pursuing them through the state's direct appeal process or through appropriate post-

9 conviction relief.  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v.*

10 *Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).  A claim has been fairly presented if the petitioner

11 has described both the operative facts and the federal legal theory on which the claim is

12 based.  *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled*

13 *on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini*

14 *v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001).  The exhaustion requirement will not be

15 met where the Petitioner fails to fairly present his claims.  *Roettgen*, 33 F.3d at 38.

16     If a petition contains claims that were never fairly presented in state court, the federal

17 court must determine whether state remedies remain available to the petitioner.  *See Rose v.*

18 *Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989)

19 (O'Connor, J., concurring).  If remedies are available in state court, then the federal court

20 may dismiss the petition without prejudice pending the exhaustion of state remedies.  *Id.*

21 However, if the court finds that the petitioner would have no state remedy were he to return

22

23 decision on his Rule 32 petition, and the trial court's failure to rule on the delayed petition
for review, Respondents can now claim that Cecil has not properly exhausted his claims in

24 state court.  In other words, the same series of events, none of which were the result of

25 Cecil's lack of diligence, resulted in  1) Cecil's inability to file a timely petition for review,
which started the one-year clock ticking; and 2) Cecil's inability to present the claims in his

26 Rule 32 petition for review to the court of appeals, which leaves them unexhausted and

27 procedurally defaulted.  Respondents acknowledge that the issues raised in Cecil's habeas
petition were also raised in his Rule 32 proceedings in state court.

28

to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal court may decline to consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

Further, a procedural default may occur when a Petitioner raises a claim in state court, but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S. at 730-31. In such cases, federal habeas review is precluded if the state court opinion contains a plain statement clearly and expressly relying on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *See Harris*, 489 U.S. at 260. A state procedural default ruling is "independent" unless application of the bar depends on an antecedent ruling on the merits of the federal claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, just as in cases involving defaulted claims that were not fairly presented, federal habeas review of the claims are barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

In this case, the trial court dismissed Cecil's claims of prosecutorial misconduct and involuntary statements, finding them precluded, because they could have been raised on direct appeal and were not. *See* Ariz. R. Crim. P. 32.2(a)(1). In doing so, the trial court made a plain statement clearly and expressly relying on a procedural ground that was

1     independent of the federal claim. *Ake v. Oklahoma*. Cecil has not demonstrated a

2     miscarriage of justice or cause and actual prejudice to excuse the default. *See Coleman*.

3         In addition, the trial court dismissed the ineffective assistance claim, finding that Cecil

4     had "presented nothing more than conclusory allegations. He has shown neither deficient

5     performance nor prejudice" (Doc. #11, Exh M). Having reviewed both the Rule 32 petition

6     and Cecil's federal habeas claim, the Court agrees. In his pro se petition for post-conviction

7     relief, Cecil contends that trial counsel was ineffective in several respects: 1) Cecil was not

8     told that use of prior convictions greater than ten years old was prohibited; 2) he was told not

9     to testify because the jury could then be informed of his criminal record; 3) his alibi

10    witnesses were not called to testify; 4) his involuntary statements were admitted at trial; 5)

11    his appellate counsel failed to raise certain issues on appeal; and 6) trial counsel did not

12    challenge the grand jury proceedings (*Id*., Exh K).

13        In Ground II of his habeas petition, Cecil states the following as facts supporting his

14    claim of ineffective assistance:

15         Ineffective assistance of counsel in every aspect of my case from beginning to
        now. My public defender did not do a good job in representing me. My arrest
16       "They were not present" In my grand jury they allowed the police to lie and
        admit false evidence. At my pretrial they switched lawyers waiving my
17       speedy trial over my objection for unnecessary reason since lawyers law firms
        both had dealings with prosecutor's paid witness in the past. My trial lawyer
18       was ineffective assistance of counsel in allowing a number of mistrial issues
        to pass on by without saying anything. State level appeal attorney would not
19       raise all the issues in my appeal. I.A.C. Rule thirty two lawyer was ineffective
        assistance of counsel for not filing Rule 602 issues in my Rule 32, because of
20       friendship with the trial lawyer. My trial lawyer did not file for a new trial
        after I was sentenced even though he knew about fundamental errors in my
21       trial.

22    (Doc. #1 at 6).

23        Congress may have envisioned this set of circumstances when it enacted that portion

24    of the Anti-Terrorism and Effective Death Penalty Act which provides that an application

25    for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

26    applicant to exhaust the remedies available in the courts of the State. *See* 28 U.S.C. §

27    2254(b)(2). Assuming *arguendo* that this claim was fully exhausted in state court *and* fairly

28

1 | presented in this Court, it is without merit. Cecil's claims made in his Rule 32 petition were

2 | either legitimate trial strategy, *see Strickland v. Washington*, 466 U.S. 668,688 (1984) or

3 | were frivolous claims, which counsel is not required to present. *See Anders v. California*,

4 | 386 U.S. 738, 744-45 (1967). To the extent that Cecil's claim in his federal petition is even

5 | specific enough to alert this Court to the underlying federal legal theory, *see Castillo v.*

6 | *McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005), it still fails for the same reasons.

7 | **IT IS THEREFORE RECOMMENDED** Christopher Lee Cecil's petition for writ

8 | of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE** (Doc. #1)**.**

9 | This recommendation is not an order that is immediately appealable to the Ninth

10 | Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

11 | Appellate Procedure, should not be filed until entry of the district court's judgment. The

12 | parties shall have ten days from the date of service of a copy of this recommendation within

13 | which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules

14 | 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within

15 | which to file a response to the objections. Failure timely to file objections to the Magistrate

16 | Judge's Report and Recommendation may result in the acceptance of the Report and

17 | Recommendation by the district court without further review. *See United States v. Reyna-*

18 | *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual

19 | determinations of the Magistrate Judge will be considered a waiver of a party's right to

20 | appellate review of the findings of fact in an order or judgment entered pursuant to the

21 | Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

22 | DATED this 23rd day of August, 2005.

23 |

24 |

25 |

26 | David K. Duncan
United States Magistrate Judge

27 |

28 |